UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HENRY RIVERA,                                         :

               Petitioner,            :            06 Civ. 14421(AJP)
                                   (04 Crim. 407 (JSR))

          -against-               :

                                **OPINION AND ORDER**

UNITED STATES OF AMERICA,                 :

               Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Pro se petitioner Henry Rivera has petitioned pursuant to 28 U.S.C. § 2255 to vacate his June 28, 2005 sentence of 87 months imprisonment.  (Dkt. No. 1: Pet. ¶¶ 2-3.)  Rivera claims that he was denied effective assistance of counsel because his defense counsel failed to file a notice of appeal after Rivera allegedly instructed her to do so.  (Pet. ¶ 12(A); Dkt. No. 2: Rivera Br. at 1.)  The parties have consented to decision of Rivera's § 2255 petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 4.)

           For the reasons set forth below, Rivera's petition is DENIED.

<u>FACTS</u>

**<u>The Plea Agreement</u>**

           On March 16, 2005, petitioner Henry Rivera entered into a written plea agreement with the Government.  (Dkt. No. 3: Gov't Opp. Br. Ex. B: Plea Agmt.)  The plea agreement stipulated that the Government would accept a guilty plea from Rivera to Count 5 of the indictment,

charging a "conspiracy to distribute and possess with intent to distribute marijuana and oxycodone" in violation of 21 U.S.C. § 846.  (Plea Agmt. at 1.)  The plea agreement included the parties' stipulation to the following calculation of Rivera's Sentencing Guidelines offense level:

> 1.      Pursuant to U.S.S.G. § 2D1.1(c)(6), because the offense conduct involved the equivalent of between 400 kilograms and 700 kilograms of marijuana, the base offense level for Count Five is 28.
>
> 2.      Pursuant to U.S.S.G. § 2D1.1(b)(1), the offense level is increased by two levels because a firearm was possessed.
>
> 3.      Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G.    Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction is warranted, pusuant to § 3E1.1(b), U.S.S.G., because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.
>
> In accordance with the above, the applicable Guidelines offense level is 27.

(Plea Agmt. at 2.)

The plea agreement stated that based on this offense level and Rivera's criminal history category (of III), Rivera's "stipulated sentencing Guidelines range is 87 to 108 months (the 'Stipulated Guidelines Range')."  (Plea Agmt. at 2, 3.)  Rivera and the Government agreed in the plea agreement "that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all the factors set forth in Title 18, United States Code, Section 3553(a)."  (Plea Agmt. at 3.)

Rivera and the Government further agreed in the plea agreement to the following:

> It is agreed (i) that <u>the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255</u> and/or Section 2241, <u>any sentence within or below the Stipulated Guidelines Range of 87 to 108 months</u> and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range.  It is further <u>agreed that any sentence within the Stipulated Guidelines Range is reasonable.</u>  This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

(Plea Agmt. at 4, emphasis added.)

**<u>The Guilty Plea Proceeding</u>**

On March 16, 2005, Rivera pleaded guilty before Judge Rakoff.  (Dkt. No. 3: Gov't Opp. Br. Ex. C: Plea Tr. 18.)  Rivera stated that his mind was clear and that he understood the proceedings, and Judge Rakoff found that Rivera was competent to enter an informed plea.  (Plea Tr. 5-6.)  Judge Rakoff asked Rivera about his attorney, Ellyn I. Bank:

THE COURT:  Mr. Rivera, are you satisfied with Ms. Bank's representation of you?

THE DEFENDANT:  Yes.

THE COURT:  Have you had a full opportunity to discuss this matter with her?

THE DEFENDANT:  Yes, sir.

THE COURT:  And have you told her everything you know about this matter?

THE DEFENDANT:  Yes, sir.

(Plea Tr. 6.)

Rivera pled guilty to Count Five of the indictment, charging conspiracy to distribute and possess with intent to distribute marijuana and Oxycontin. (Plea Tr. 7, 18.) Rivera stated that he had gone over everything that the Court could take into consideration when determining his sentence, including the Sentencing Guidelines. (Plea Tr. 9-10.) Rivera stated that his counsel read the plea agreement to him in its entirety, that she explained it all to him, and that he understood its terms. (Plea Tr. 10-11.) Judge Rakoff specifically referred to the plea agreement's guideline calculation of 87 to 108 months, and informed Rivera that the Court was not bound by the plea agreement's calculation, and could choose whether or not to follow the recommendations in the plea agreement when sentencing him. (Plea Tr. 11; see also id. at 17.) Rivera stated that he understood that pursuant to the plea agreement, if Judge Rakoff sentenced him to 108 months imprisonment or less, he had agreed that he would not appeal his sentence. (Plea Tr. 17.)

**Sentencing**

Prior to sentencing, Rivera's counsel, Ellyn Bank, wrote a letter requesting that Judge Rakoff "impose as lenient a sentence as possible based on Mr. Rivera's advisory guideline range and the factors that are enumerated in 18 USC 3553(a)." (Dkt. No. 3: Gov't Opp. Br. Ex. E: 6/22/05 Bank Ltr. at 1; see id. at 5.) Ms. Bank's letter noted that pursuant to the plea agreement, "Mr. Rivera's advisory sentence range is eighty-seven (87) to one hundred eight (108) months," and that the Presentence Report contained the same calculation. (Bank Ltr. at 2; see Rivera Presentence Report at 9-10, 15, 19.) Ms. Bank argued in the letter that:

> Mr. Rivera should be sentenced to as lenient a sentence as possible under the advisory guidelines and the factors of 18 USC 3553(a) because (1) he accepted responsibility for his actions in a timely manner, (2) his role was very limited as he

was not a leader, organizer, or manager in this conspiracy, (3) he was not engaged in any crimes of violence, (4) he did not possess any weapons himself, and, (5) with proper treatment for his drug dependency he has great potential to be rehabilitated.

(Bank Ltr. at 4.)

On June 27, 2005, Judge Rakoff sentenced Rivera to eighty-seven months in prison. (Dkt. No. 3: Gov't Opp. Br. Ex. D: Sent. Tr. 13.)  At the start of the sentencing hearing, Rivera's attorney, Ellyn Bank, stated that she had read and discussed with Rivera the presentence report and its addendum, and that they had no objections to the report.  (Sent. Tr. 2.)  Judge Rakoff stated that the "Court is in agreement with counsel and the probation officer that, under the guidelines, . . . the total offense level is 27 . . . and the guideline range is 87 to 108 months."  (Sent. Tr. 2-3; see Rivera Presentence Report at 9-10, 15, 19.)  Judge Rakoff noted that "[t]he recommendation from the probation office is to remain within the guideline range but at the lowest end, namely 87 months." (Sent. Tr. 3; see Rivera Presentence Report at 19.)  Defense counsel Bank pointed out that Rivera was still young and intended to further his educational and career goals, and accordingly requested the minimum sentence of eighty-seven months, or less.  (Sent. Tr. 9-10.)  The Government recommended a guideline sentence, noting that Rivera's co-defendants received guideline sentences. (Sent. Tr. 10-11.)  Rivera apologized for his conduct and blamed it on his drug addiction.  (Sent. Tr. 12.)

Judge Rakoff stated:

Well, I think, as I have also had occasion to say in other sentences, that the cornerstone or the touchstone of any analysis under 3553(a) is Congress' direction that the Court shall impose a sentence efficient but not greater than necessary to comply with the purposes set forth in that section.

I think, for the reasons I previously stated, and really for the reasons stated by both counsel, <u>the right sentence here is 87 months</u>. Anything less than that, I think, would not take account of the circumstance of this case and, particularly, the need for not just general deterrence but individual deterrence.

I also agree with the government that 87 months is the minimum necessary to place this within the general level that the Court has been using in other cases, in other sentences in this overall case.

On the other hand, I think while some arguments could be made that for more than 87 months, keeping in mind Congress' direction not to impose more than is necessary, I don't think I can, in good conscience, justify a sentence greater than 87 months. I think that ought to be sufficient and hopefully will be sufficient to achieve the various purposes set forth in 3553(a), and has the further advantage of being within the guideline range and therefore comports with the need for non-disparity on a more nationwide basis.

So, <u>the sentence of the Court is the defendant is sentenced to 87 months in prison</u>, to be followed by three years' supervised release on terms I will get to in a moment.

(Sent. Tr. 12-13, emphasis added.)

At the end of the sentencing proceeding, the following colloquy ensued:

THE COURT: Now, under the terms of his plea agreement it appears that the defendant has waived his right of appeal given the sentence of the Court but, Mr. Rivera, let me advise you anyway that you should go over with your counsel the question of appeal to be absolutely [sure] that you don't have any right of appeal. And if I'm wrong and you do have the right of appeal, then you need to file your notice of appeal within 10 days.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you can't afford counsel for any such appeal, the Court will appoint one for you free of charge.

Do you understand that?

THE DEFENDANT:  Yes, sir.

(Sent. Tr. 15.)

**Rivera's 28 U.S.C. § 2255 Motion**

On November 24, 2006 Rivera signed, and on December 1, 2006 the Court received, Rivera's motion pursuant to 28 U.S.C. § 2255 to vacate his sentence.  (Dkt. No. 1: Pet.)  Rivera's § 2255 motion asserts that "the petitioner at sentencing[] explicitly told his attorney that he wanted to appeal, and has since then learned that counsel had in fact failed to do so."  (Dkt. No. 2: Rivera Br. at 1; see also Pet. ¶ 12(A).)  Rivera claims that he

> was assured that he was to be sentenced to a term of "Sixty Months."  However, on the day of sentencing, the government came up with an enhancement for an alleged use of a firearm, under the U.S.S.G. § 2D1.  This was a complete surprise to the defendant/petitioner, as there was no 'nexus' for any gun, as required by the enhancement provision.  He instructed his attorney to file an appeal.

(Rivera Br. at 2-3.)

Rivera acknowledged that the one year period of limitation for filing a § 2255 motion passed prior to the filing of his motion.  (Rivera Br. at 4-6.)  Rivera nevertheless asserted that his § 2255 petition was timely because until November 21, 2006, he was "under the express belief that his appeal was pending in the court."  (Rivera Br. at 4-5.)[1]

---

[1]     Rivera explained that in August 2005, he had attempted to obtain materials from the Pro Se Office in order to research appeal possibilities.  (Rivera Br. at 4 & Att. 8/20/05 Letter.)  On October 3, 2005, the Pro Se Office responded that the state FOIL and federal FOIA statutes do not apply to the Court, and that if Rivera wanted documents from the Court's records, he could obtain copies for $.50 per page.  (Rivera Br. Att. 10/3/05 Letter.)  Rivera was therefore "left to trust in the attorney to perfect the argument, and assumed that it was in fact being perfected."  (Rivera Br. at 4.)

(continued...)

8

**Ms. Bank's Affidavit**

Ellyn I. Bank, Rivera's trial counsel, provided an affidavit to the Court at the Court's request in response to Rivera's allegation of ineffective assistance of counsel.  (Dkt. No. 3: Gov't Opp. Br. Ex. A: Bank Aff.)  Ms. Bank explained that:

> Prior to accepting the government's plea offer, I met with Mr. Rivera on March 15, 2005 at the Metropolitan Detention Center to review the proposed plea offer.  I carefully reviewed and explained each and every provision with Mr. Rivera, and I made certain that he understood the advisory guideline estimate and what it was based on, including the fact that his guidelines were increased two points for the possession of a firearm, his criminal history calculation, and the fact that he would be waiving his right to appeal if the judge sentenced him within the range specified.

(Bank Aff. ¶ 4, emphasis added; see also id. ¶¶ 13, 16-17, 24.)  Ms. Bank stated that:

> After reviewing all of the discovery with Mr. Rivera (and after the government was not interested in his cooperation) it was his decision that I should engage in negotiations with the United States Attorney's office to secure the best plea offer possible for him.  I have no doubt that Mr. Rivera fully understood the benefits and consequences of his actions by deciding to plea[d] guilty pursuant to a plea agreement.  In addition, as aforementioned, he and I discussed the waiver of his right to appeal if he was sentenced to 108 months or less on numerous occasions before he indicated that he wanted to plead guilty.

(Bank Aff. ¶ 11, emphasis added; see also id. ¶ 18.)  Ms. Bank stated that:

> I met with Mr. Rivera on many occasions to review the discovery and discuss the facts of his case.  At no time did I ever inform him that he was facing a term of 60 months imprisonment.  In fact, I never made any representation to Mr. Rivera as to what his sentence would be.  From the beginning of his case, Mr. Rivera was informed of the fact that there was no statutory mandatory minimum sentence and that the statutory maximum sentence was twenty years.  On many occasions

---

[1/]    (...continued)
More than a year later, Rivera consulted with a "clerk" in the prison library, who advised Rivera that "he most likely did not have an appeal pending without having received the Blue cover brief in the mail."  (Rivera Br. at 4-5.)  Rivera then acted "immediately" to file his current § 2255 motion.  (Rivera Br. at 5.)

> thereafter during our attorney-client meetings we discussed the applicable statutory
> sentences, but <u>I did not inform him that his sentence range was 60 months at any time
> before (or after) I received the government's plea offer</u>.

(Bank Aff. ¶ 12, emphasis added; <u>see also</u> <u>id</u>. ¶ 23.)  To the contrary, the day before Rivera's guilty

plea, Ms. Bank again "discussed in great detail [with Rivera] the applicable guideline provisions,

including the two point increase that applied because a firearm was possessed during the conspiracy."

(Bank Aff. ¶ 13.)  Ms. Bank also mailed a copy of the signed plea agreement to Rivera the day after

his plea, and she notes that the "written agreement clearly contains the two point enhancement that

Mr. Rivera now claims he was unaware of [until] sentencing."  (Bank Aff. ¶ 16.)

> Ms. Bank stated that, after his guilty plea, Rivera
>
> was interviewed by the United States Probation Department and a Presentence Report
> ("PSR") was issued.  After I received the PSR, I mailed Mr. Rivera a copy of it and
> I met with him to review the entire report in great detail.  We again reviewed the
> applicable sentencing guidelines, the possible sentence that he was facing pursuant
> to his plea agreement, and the fact that if he was sentenced within the applicable
> sentencing guidelines range he had waived his right to appeal.

(Bank Aff. ¶ 17.)

> After Judge Rakoff sentenced Rivera to 87 months imprisonment, Ms. Bank

explained that:

> Immediately after Mr. Rivera was sentenced I spoke with him in the marshal's
> holding pens on the fourth floor of 500 Pearl Street, the Southern District courthouse.
> I advised him that because his sentence was less than 108 months, which was within
> the guideline range specified in his plea agreement, he had waived his right to appeal,
> because his plea agreement contained a waiver of the right to appeal any sentence of
> 108 months or less.  I then asked him if he understood the waiver of his right to
> appeal and he told me that he did.  In addition, we discussed the fact that he did not
> have any viable grounds for an appeal.

> Mr. Rivera clearly and lucidly told me that he understood what I had
> explained about his appellate waiver and he informed me that I should not file a
> notice of appeal on his behalf.
>
> I further explained to Mr. Rivera that because he had been sentenced and did
> not want to file an appeal I would be relieved from representing him.

(Bank Aff. ¶¶ 20-22, emphasis added.)

In response to Ms. Bank's affidavit, all Rivera disputes is that he told Ms. Bank not

to appeal, arguing that "[w]hat unlearned defendant would not want his or her attorney to challenge

a gun enhancement that was not legally applicable to him."  (Dkt. No. 7: Rivera Traverse at 3.)

Rivera did not dispute anything else that Ms. Bank stated in her affidavit.

## ANALYSIS

## I.    THE STRICKLAND V. WASHINGTON STANDARD ON INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL [2/]

---

[2/]    For additional decisions authored by this Judge discussing the Strickland v. Washington standard for ineffective assistance of counsel in language substantially similar to this section of this Report and Recommendation, see, e.g., Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873 at *11-12 (S.D.N.Y. May 11, 2007) (Peck, M.J.); Cassie v. Graham, 06 Civ. 5536, 2007 WL 506754 at *21-23 (S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); Brown v. Brown, 05 Civ. 10434, 2006 WL 3405480 at *14-15 (S.D.N.Y. Nov. 27, 2006) (Peck, M.J.) (citing my prior decisions); Pena v. United States, 04 Civ. 9700, 00 Cr. 36, 2005 WL 1176073 at *4-5 (S.D.N.Y. May 18, 2005) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *23-25 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *26-27 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *22-24 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *18-19 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005), aff'd, 2007 WL 870375 (2d Cir. 2007); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *16-19 (S.D.N.Y. May 31, 2000) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *11

(continued...)

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u> at 687, 104 S. Ct. at 2064; <u>accord, e.g.,</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 62-63 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006).  This performance is to be judged by an objective standard of reasonableness.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 688, 104 S. Ct. at 2064.[3/]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[4/]

---

[2/]    (...continued)
(S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, 41 Fed. Appx. 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003).

[3/]    <u>Accord, e.g.,</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63.

[4/]    <u>Accord, e.g.,</u> <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698, 122 S. Ct. at 1852; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

Second, the defendant must show prejudice from counsel's performance. Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S. Ct. at 2068-69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.[5/]

The Supreme Court has counseled that these principles "do not establish mechanical rules." Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at 2069. The focus of the inquiry

---

[5/]    See also, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542. The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not." Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[6/]

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . .  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[7/]

---

[6/] Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

[7/] See also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional (continued...)

As the Second Circuit noted:  "The <u>Strickland</u> standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d at 199.

A. <u>Strickland Applies to Ineffective Assistance Claims Arising Out of A Guilty Plea or at Sentencing</u>

The <u>Strickland</u> standard also applies to ineffective assistance claims arising out of a guilty plea.  <u>Eg.</u>, <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985); <u>United States</u> v. <u>Thomas</u>, 74 Fed. Appx. 113, 115 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1019, 124 S. Ct. 2089 (2004); <u>United States</u> v. <u>Couto</u>, 311 F.3d 179, 187 (2d Cir. 2002), <u>cert. denied</u>, 544 U.S. 1034, 125 S. Ct. 2283 (2005).[8]  "In the context of a guilty plea, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a

[7] (...continued)
claim."); <u>Jackson</u> v. <u>Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing <u>Strickland</u> claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations omitted); <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), <u>cert. denied</u>, 513 U.S. 820, 115 S. Ct. 81 (1994).

[8] <u>See</u>, <u>e.g.</u>, <u>Ahmed</u> v. <u>United States</u>, 05 Civ. 7656, 2006 WL 328339 at *9 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.); <u>Gomez</u> v. <u>Duncan</u>, 02 Civ. 0846, 2004 WL 119360 at *28 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); <u>Moore</u> v. <u>United States</u>, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 *11 & n.11 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (& cases cited therein); <u>Yeung</u> v. <u>Artuz</u>, 97 Civ. 3288, 2000 WL 145103 at *8 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.) (citing cases); <u>People</u> v. <u>McDonald</u>, 1 N.Y. 3d 109, 115, 769 N.Y.S.2d 781, 785 (2003); <u>see also</u> cases cited in fn.8.

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Moore v. United States, 2001 WL 253432 at *11 (quoting Hill v. Lockhart, 474 U.S. at 59, 106 S. Ct. at 370).[9/]

        Where the petitioner's claim is that counsel was ineffective at the time of sentencing, Strickland applies, and the second prong (prejudice) requires a showing that there is a reasonable probability that, but for counsel's error, the result of sentencing would have been different, that is, the petitioner would have received a lesser sentence. E.g., United States v. Workman, 110 F.3d 915, 920 (2d Cir.), cert. denied, 520 U.S. 1281, 117 S. Ct. 2469 (1997).[10/]

## II.   RIVERA'S COUNSEL WAS NOT INEFFECTIVE FOR NOT FILING AN APPEAL; RIVERA'S INEFFECTIVE ASSISTANCE CLAIM IS DENIED

        Rivera claims that his counsel was ineffective because "the petitioner at sentencing[] explicitly told his attorney that he wanted to appeal, and has since then learned that counsel had in

---

[9/]    Accord, e.g., United States v. Garcia, 57 Fed. Appx. 486, 489 (2d Cir.), cert. denied, 538 U.S. 992, 123 S. Ct. 1815 (2003); United States v. Couto, 311 F.3d at 187; United States v. Coffin, 76 F.3d 494, 498 (2d Cir.), cert. denied, 517 U.S. 1147, 116 S. Ct. 1445 (1996); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992); Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992); Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir. 1991); Ahmed v. United States, 2006 WL 328339 at *9; Gomez v. Duncan, 2004 WL 119360 at *28; Heyward v. Costello, 91 Civ. 1570, 1994 WL 263426 at *3-4 (S.D.N.Y. June 13, 1994); People v. McDonald, 1 N.Y.3d at 115, 769 N.Y.S.2d at 785.

[10/]    See, e.g., Ahmed v. United States, 2006 WL 328339 at *9; Fuse v. United States, 04 Civ. 7986, 2005 WL 2173743 at *1-2 (S.D.N.Y. Sept. 7, 2005); Santiago-Diaz v. United States, 299 F. Supp. 2d 293, 299-301 (S.D.N.Y. 2004); Hall v. United States, 01 Civ. 7525, 99 CR. 794, 2002 WL 31357780 at *1-2 (S.D.N.Y. Oct. 17, 2002); Luyanda v. United States, 95 Civ. 3797, S3 91 CR. 49, 1995 WL 450488 at *2 (S.D.N.Y. July 28, 1995), aff'd, 100 F.3d 945 (2d Cir. 1996).

fact failed to do so."  (Dkt. No. 2: Rivera Br. at 1.)  Rivera argues that his reason for wanting his

attorney to appeal after sentencing was that:

> [t]he defendant/petitioner was assured that he was to be sentenced to a term of "Sixty
> Months."  However, on the day of sentencing, the government came up with an
> enhancement for an alleged use of a firearm, under the U.S.S.G. § 2D1.  This was a
> complete surprise to the defendant/petitioner, as there was no 'nexus' for any gun, as
> required by the enhancement provision.  He instructed his attorney to file an appeal.

(Rivera Br. at 2-3.)  Rivera does not give any further details as to the circumstances surrounding his

alleged request to his attorney to file an appeal.  (See Rivera Br.; Dkt. No. 7: Rivera Traverse.)

### A.    Rivera's Petition Is Not Precluded By His Waiver of Appeal Agreement

Rivera's § 2255 petition is unaffected by the waiver of appeal contained in his plea

agreement (see page 3 above), because even where a defendant waives his right to appeal or

challenge his sentence, his attorney's failure to file a notice of appeal upon the defendant's instruction

to do so constitutes per se prejudice under Strickland's second prong.  E.g., Campusano v. United

States, 442 F.3d 770, 771-72 (2d Cir. 2006) ("The question presented in this case is whether an

attorney who fails to file a notice of appeal requested by his client is constitutionally ineffective

when the client waived appeal in his plea agreement.  We hold that even after a waiver, a lawyer who

believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a

brief pursuant to Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L.Ed. 493 (1967).  When

counsel fails to do so, we will presume prejudice, as required by Roe v. Flores-Ortega, 528 U.S. 470,

120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), and the defendant will be entitled to a direct appeal

without any showing on collateral review that his appeal will likely have merit."); see, e.g., Roe v.

Flores-Ortega, 528 U.S. 470, 477, 120 S. Ct. 1029, 1035 (2000) ("[A] lawyer who disregards specific

instructions from the defendant to file a notice of appeal acts in a manner that is professionally

unreasonable. . . . At the other end of the spectrum, a defendant who explicitly tells his attorney not

to file an appeal plainly cannot later complain that, by following his instructions, his counsel

performed deficiently.").[11]

###   B.   The Court Need Not Hold An Evidentiary Hearing

To determine whether Rivera's counsel was ineffective for not filing a notice of

appeal, this Court must determine whether Rivera requested counsel to file an appeal.  Under § 2255,

a district court should not dismiss a petition for habeas corpus without conducting an evidentiary

hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner

is entitled to no relief."  28 U.S.C. § 2255.  Section 2255, however, "does not strip the district courts

of all discretion to exercise their common sense."  Machibroda v. United States, 368 U.S. 487, 495,

82 S. Ct. 510, 514 (1962).  Section 2255 provides that the "court may entertain and determine such

---

[11]     See also, e.g., Hernandez v. United States, 202 F.3d 486, 489 (2d Cir. 2000) ("We conclude
that Strickland's requirement of a showing of prejudice does not apply where the alleged
ineffective assistance lies in a counsel's unexcused failure to bring a direct appeal from a
criminal conviction upon the defendant's direction to do so.  In such circumstances, prejudice
will be presumed."); McHale v. United States, 175 F.3d 115, 119 (2d Cir. 1999) (where
counsel has failed to file an appeal despite the petitioner's request, "it is clear that the
petitioner need not demonstrate that, but for the ineffectiveness of counsel, such an appeal
would have succeeded or even would have had merit."); Fernandez v. United States, 146
F.3d 148, 149 (2d Cir. 1998) ("[C]ounsel is ineffective only when ignoring a defendant's
explicit direction to file an appeal."); Morales v. United States, 143 F.3d 94, 97 (2d Cir.
1998) (Adopting Seventh Circuit rule that "ignoring a client's request to file an appeal is
ineffective assistance without regard to the probability of the appeal's success.").

motion without requiring the production of the prisoner at the hearing."  28 U.S.C. § 2255.  The

Second Circuit has held that:

> It is within the district court's discretion to determine whether a hearing is warranted.
> Among the wealth of materials available to the district court at its direction are the
> trial record, letters, documents, exhibits, affidavits and written interrogatories.  After
> expanding the record, the district court then decides if an evidentiary hearing also is
> required. Our precedent disapproves of summary dismissal of petitions where factual
> issues exist[], but it permits a "middle road" of deciding disputed facts on the basis
> of written submissions.

Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); accord, e.g.,

Campusano v. United States, 442 F.3d at 776 ("As noted in Chang v. United States and Pham v.

United States, the district court has discretion to determine if a testimonial hearing will be

conducted.") (citations omitted); Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (Petitioner's

"claim was not summarily dismissed by the district court.  At the request of the court, the record was

supplemented by a detailed affidavit from trial counsel credibly describing the circumstances

concerning [petitioner's § 2255 claim].   We believe that with that submission the record was

sufficient to support dismissal of the petition.").  Accordingly, because the Court in this case has at

its disposal the necessary plea and sentencing transcripts, the plea agreement and Presentence Report,

and a detailed affidavit from Rivera's counsel, an evidentiary hearing is unnecessary, and the Court

will use the "middle ground" of determining the merits of Rivera's § 2255 petition based on these

materials and submissions.

C.    **Rivera's Claim is Simply Incredible**

Rivera's bald assertion that he asked his trial counsel to file a notice of appeal on his behalf is directly contradicted by his former counsel's affidavit.  Ms. Bank stated clearly in her affidavit that Rivera told her that he understood that he waived any right to appeal, that he understood that there were no viable grounds for appeal, and that he did not want to file an appeal. (See pages 8-10 above.)  Rivera's alleged reason for wanting his attorney to file a notice of appeal – that he was assured of a 60 month sentence and that it was a "complete surprise" at sentencing that he would be subject to a firearms enhancement that would require a longer sentence – is completely at odds with all of the documentary record in this case.  (See page 7 above.)  There is no indication in the record that Rivera could have expected a 60 month sentence.  First, the plea agreement specifically stipulated that Rivera's sentencing Guidelines range was 87 to 108 months.  (See page 2 above.) The plea agreement clearly spelled out the calculation of Rivera's Guidelines offense level, including that his offense level was increased by two levels because a firearm was possessed during the crime.  (See page 2 above.)  Defense counsel Ms. Bank's affidavit unequivocally asserts that she met with Rivera on March 15, 2005 and discussed "each and every provision" of the proposed plea agreement, "including the fact that his guidelines were increased two points for the possession of a firearm."  (See page 8 above.)  Second, during his guilty plea allocution, Rivera stated that he understood that he had agreed that if the Court sentenced him to 108 months imprisonment or less, he would not be able to appeal his sentence.  (See page 4 above.)  Third, Rivera's Presentence Report calculated a Guidelines range of 87 to 108 months, based on the firearm enhancement, and at the

sentencing proceeding, Rivera's counsel stated on the record that she had read and discussed the Presentence Report with Rivera, and that they had no objections to the report.  (See page 5 above.) Ms. Bank's affidavit confirmed that she and Rivera went over the Presentence Report "in great detail" together.  (See page 9 above.)  Lastly, in a presentence letter and during sentencing, Ms. Bank specifically encouraged Judge Rakoff to be lenient when sentencing Rivera, asking for the minimum of 87 months imprisonment, or less.  (See page 4 above.)

Based on this evidence, this Court finds it incredible that Rivera instructed his attorney to file a notice of appeal on his behalf because he expected a sentence of sixty months. Consequently, Rivera has not fulfilled the first Strickland prong because he is unable to show that his counsel's actions were deficient.  Rivera's § 2255 petition to vacate his sentence therefore is meritless, and accordingly is DENIED.[12/]  See, e.g., Davila-Bajana v. United States, No. 01 CV 7329, 2002 WL 2022646 at *4 (E.D.N.Y. June 26, 2002) (Raggi, D.J.) (Where petitioner claimed that his attorney ignored his request to file a notice of appeal, court denied § 2255 petition without a hearing based on attorney's affidavit contradicting petitioner's account.); Adama v. United States, 01 Civ. 5539, 99 Cr. 1177, 2001 WL 1568809 at *1 (S.D.N.Y. Dec. 7, 2001) (Where petitioner claimed his

---

[12/]    The Government also argued that Rivera's § 2255 petition should be dismissed as untimely. (Dkt. No. 3: Gov't Opp. Br. at 1-5.)  The Court notes that the "proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed" and "the date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [petitioner's] post-sentence conversation with his lawyer and on the conditions of his confinement" after sentencing.  Wims v. United States, 225 F.3d 186, 189-91 (2d Cir. 2000).  Because the Court is dismissing Rivera's § 2255 petition on the merits, the Court need not reach this fact-specific issue.

counsel was "ineffective in failing to file a notice of appeal," court denied § 2255 petition without a hearing based on attorney's affidavit contradicting petitioner's account. "Given the fact that the plea agreement expressly precluded an appeal because the sentence imposed was below the stipulated guideline range, there is no reason to accept Petitioner's uncorroborated statement that he asked his counsel to file a notice of appeal."); Gutierrez-Fernandez v. United States, 99 Civ. 4484, 97 Cr. 1173, 2000 WL 1559945 at *4 (S.D.N.Y. Oct. 18, 2000) (Where petitioner claimed that his attorney was ineffective for not filing an appeal as requested, court denied § 2255 petition without a hearing because "Petitioner's bald assertion is contradicted by his former counsel's affidavit.").

## CONCLUSION

For the reasons discussed above, Rivera's § 2255 petition is DENIED. A certificate of appealability does not issue.

SO ORDERED.

DATED:      New York, New York
            July 6, 2007


**Andrew J. Peck**
United States Magistrate Judge


Copies to:    Henry Rivera
              Benjamin Gruenstein, Esq.
              Ellyn I. Bank, Esq.

H:\OPIN\RIVERA-Henry